**State of Vermont v. John and Adrienne Carroll v. Mobil Oil Corp.; Mary Heaslip; Merrill Transport Co., d/b/a J.A. Carmen Trucking Co., Inc.; Melru Corp.; and Vermont Railway, Inc.**

[765 A.2d 500]

No. 99-472

Present: **Dooley, Morse and Skoglund, JJ., and Davenport, Supr. J., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed December 1, 2000

*David W. Gartenstein* of *Downs Rachlin & Martin PLLC*, Brattleboro, for Third-Party Plaintiffs-Appellants.

*Shannon A. Bertrand* of *Reiber, Kenlan, Schwiebert, Hall & Facey, P.C.*, Rutland, for Third-Party Defendant-Appellee.

**Morse, J.** John and Adrienne Carroll appeal the Washington Superior Court's dismissal of their third-party complaint against Melru Corporation. The court determined that the Carrolls' third-party complaint against Melru for contribution and indemnification pursuant to 10 V.S.A. § 6615(i) for clean-up costs incurred by the State related to hazardous materials located on the Carrolls' property was precluded by a judgment in a previous action between the parties. The Carrolls argue that res judicata should not apply in this case to bar their present claim against Melru. We agree and, therefore, reverse.

In August 1997, the State of Vermont brought an action against the Carrolls under 10 V.S.A. § 6615 for clean-up costs it had incurred in its ongoing efforts to remedy petroleum contamination located on a piece of property owned by the Carrolls. A fuel storage and distribution facility had been operated on the property under several different owners starting in the early 1900s. Having been alerted to the petroleum contamination of the site, the State engaged in

investigatory and remedial activities starting in 1990. As of October 1998, the State had incurred roughly $355,000 in costs.

Under 10 V.S.A. § 6615(i), the Carrolls filed a third-party complaint against several potentially responsible parties as third-party defendants, seeking contribution and indemnification for their share of the clean-up costs. The parties were Mobil Oil Corp., Mary Heaslip, Merrill Transport Co., Vermont Railway, Inc., and Melru. Melru thereafter brought a motion to dismiss the claim against it, arguing that a judgment in its favor on a counterclaim brought by the Carrolls in a prior action foreclosed the present claim.

Melru, which owned a parcel of property neighboring the Carrolls' property, had brought suit against the Carrolls in 1992 seeking damages for petroleum contamination of its land stemming from activity on the Carrolls' property. The Carrolls filed a counterclaim for damages and equitable relief based on an allegation that leakage from a 275-gallon fuel tank on Melru's property had caused contamination of their property. In 1995, after a bench trial, the Bennington Superior Court entered judgment in favor of Melru on the Carrolls' counterclaim, determining that, although there was a contamination plume extending from Melru's property onto that of the Carrolls, the evidence of causation linking the plume and the contamination on the Carrolls' property was "slight" and that the Carrolls had failed to prove damages resulting from the contamination plume.

After reviewing the earlier judgment and following a hearing, the trial court in this case determined that the Carrolls' present claim was barred by res judicata. The court dismissed the claim against Melru, entering a final judgment in the case with respect to Melru only. The Carrolls appeal to this Court.

■■ Res judicata, or claim preclusion, generally bars the litigation of a claim if there exists an earlier final judgment in which "the parties, subject matter and causes of action are identical or substantially identical." *Russell v. Atkins*, 165 Vt. 176, 179, 679 A.2d 333, 335 (1996) (internal quotation marks and citations omitted); see also Restatement (Second) of Judgments § 19 (1982) ("A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim."). In other words, for res judicata to apply, there must be (1) a valid final judgment in the prior action, (2) identity between the parties to the prior action and the present action, (3) the same subject matter involved in both actions and (4) the same causes of action involved. Res judicata bars not only claims that were actually litigated in the previous action, but those

that could have and should have been litigated. See *Russell*, 165 Vt. at 179, 679 A.2d at 335; 18 C. Wright, et al., Federal Practice and Procedure § 4406, at 45 (1981 & 2000 Supp.) (noting that for purposes of res judicata, or claim preclusion, the process of defining a claim is "aimed at defining the matters that both might and *should* have been advanced in the first litigation") (emphasis in original). Res judicata thereby prevents parties from engaging in the practice of claim-splitting. See Restatement (Second) of Judgments §§ 24 & 25 (general rule against claim-splitting and examples thereof); see also *Carmichael v. Adirondack Bottled Gas Corp. of Vermont*, 161 Vt. 200, 207, 635 A.2d 1211, 1216 (1993) (noting exception to rule against claim-splitting arising when the opposing party acquiesces in the practice by failing to object at the trial level).

■ The Restatement notes with respect to claim preclusion, however, that "[p]reclusion is narrower when a procedural system in fact does not permit the plaintiff to claim all possible remedies in one action." Restatement (Second) of Judgments § 25 cmt. f. It goes on to state:

(1) When any of the following circumstances exists, the general rule [against claim-splitting] does not apply to extinguish the [later] claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

. . . .

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or

(d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim.

Restatement (Second) of Judgments § 26; see also *Shapiro v. Alexanderson*, 741 F. Supp. 472, 476 (S.D.N.Y. 1990) (action seeking

compensation for clean-up costs brought pursuant to CERCLA not barred by previous contract actions brought in state court because state court did not have jurisdiction to hear CERCLA claim); *Lanziano v. Cocoziello*, 701 A.2d 754, 758-59 (N.J. Super. Ct. App. Div. 1997) (holding previous contract action against defendant's tenants for damages stemming from contamination of property did not bar subsequent action against defendants for clean-up costs pursuant to state Spill Compensation and Control Act because right of action for contribution did not accrue until after first action was settled and dismissed).

■ Because of the unique statutory right at issue in this case and the procedural posture in which it arises, the Carrolls could not have been expected to bring their third-party claim for contribution and indemnification as a compulsory counterclaim in the previous action and therefore should not be barred from bringing it now. Cf. *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 56, 539 A.2d 534, 536 (1987) ("A failure to plead a compulsory counterclaim will result in the barring of litigation of the claim in a subsequent proceeding."). The Carrolls' ability to seek contribution and indemnification from Melru for remediation costs incurred by the State was dependent on the State first bringing a claim against them for the clean-up costs. See 10 V.S.A. § 6615(c) & (i). Prior to that happening, however, Melru brought an action against the Carrolls, forcing the Carrolls to bring any claims they had against Melru regarding the contamination of their property at that time. See V.R.C.P. 13(a) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."). Because the State had not initiated any action against the Carrolls when Melru brought its claim against them, the court in the previous action between the parties could not have entertained the Carrolls' third-party, derivative claim under § 6615. Cf. *Riblet Tramway Co. v. Marathon Electronics-Avtek Drive Div.*, 159 Vt. 503, 506, 621 A.2d 1274, 1275 (1993) (noting that an *independent* action seeking indemnity or contribution would be *premature* when liability has not yet been determined, and holding that "the third-party plaintiff's claim against the third-party defendant arises or accrues when the plaintiff files the complaint" in the underlying action).

■ Furthermore, the prior decision in Melru's favor on the Carrolls' compulsory counterclaim was based on a determination that

the Carrolls had provided insufficient proof of damages. It is inconsistent with the statutory scheme governing waste management to preclude the Carrolls from now bringing a third-party claim for contribution and indemnification under the statute for costs incurred by the *State*. See 10 V.S.A. § 6601(c) (declaration of policy and purpose stating, "[t]he generators of waste should pay disposal costs that reflect the real costs to society of waste management and disposal."). The statutory scheme is intended to hold all parties responsible for hazardous materials contamination accountable for the costs associated with its proper clean-up and disposal. Therefore, the Carrolls should not be precluded under the doctrine of res judicata, by the Bennington Superior Court's earlier judgment stemming from its findings on damages, from pursuing a potential third-party claim for contribution and indemnification against Melru in the underlying action brought against them by the State for costs that the *State* incurred.

We note that Melru does *not* argue that the present third-party claim should be dismissed based on the related doctrine of collateral estoppel. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 461, 752 A.2d 26, 34-35 (2000) ("Collateral estoppel, or issue preclusion, bars the subsequent relitigation of an issue that was actually litigated and decided in a prior case between the parties, so long as there was a final judgment on the merits and the issue was necessary to the resolution of the action."). A party may be held responsible for remediation costs associated with hazardous materials if the State is able to demonstrate that a release of hazardous materials occurred and "the release . . . occurred at or involved any real property, structure, equipment or conveyance under the control of that person." 10 V.S.A. § 6615(c). Arguably, a party could be precluded from relitigating the issue of involvement in the release of hazardous materials for purposes of liability under § 6615 by the resolution of this question in an earlier suit.

In this case, however, the trial court's findings in the earlier suit on the causal relationship between the contamination plume originating on Melru's property and the hazardous materials located on that of the Carrolls are ambiguous at best. The court determined that the plume extended onto the Carrolls' property, but then concluded that evidence of causation regarding contamination of their property was "slight." Furthermore, the trial court also found that the Carrolls had failed to prove damages resulting from the contamination plume when finding in favor of Melru on the Carrolls' counterclaim; therefore, it is

not clear that its findings regarding the link between the plume and the general contamination on the Carrolls' property was necessary to the resolution of their claim in Melru's favor. Presumably, that is why Melru has not argued that dismissal of the present claim is required by the doctrine of collateral estoppel and rightly so, as the ambiguous findings on the issue of causation should not prevent the Carrolls from pursuing the present claim against Melru for clean-up costs for which it may be potentially responsible.

*Reversed and remanded.*