**Harvard Trust Company v. Dana S. Bray, Germaine Bray, Louis Lisman, Escrow Agent, and Anne S. Bray**

[413 A.2d 1213]

No. 333-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Dier, Superior Judge, Specially Assigned

Opinion Filed March 25, 1980

*Stephen C. Walke, Jr.*, Montpelier, for Plaintiff.

*Howard J. Seaver*, Office of *Donald E. O'Brien*, Burlington, for Dana and Germaine Bray.

**Barney, C.J.** This litigation comes before us for interlocutory review of a question of trial court jurisdiction. The plaintiff contends that personal jurisdiction was conferred by virtue of defendant Dana Bray's entry of appearance in the action and alternatively argues that the defense of lack of personal jurisdiction was waived because not timely asserted.

By a 1959 Florida decree, defendant Dana Bray was divorced from defendant Anne Bray. The decree incorporated by reference an agreement reached by those parties which provided that Dana Bray pay alimony to Anne Bray. The agreement further provided that the alimony obligation be secured through an escrow arrangement. Pursuant thereto Dana Bray executed an agreement which placed the shares of three Vermont corporations in the custody of Louis Lisman as escrow agent.

On July 1, 1975, the plaintiff, Harvard Trust, commenced this litigation. Plaintiff filed a summons and complaint naming

Dana Bray and his current wife, Germaine Bray, as defendants, together with a motion for possessory attachment. The gravamen of the complaint was that the defendants had guaranteed a promissory note which obligated a partnership to pay plaintiff $50,000 plus interest, and that the partnership was in default. Dana Bray was alleged to be a member of the partnership. The motion sought to attach the stock of two of the three corporations held by the escrow agent.

According to the complaint, plaintiff's principal place of business is in Massachusetts. The complaint did not allege, nor has it been since asserted, that the partnership is organized or operates under the law of Vermont or that the note was executed or guaranteed here.

Process was served on defendants Dana and Germaine Bray by leaving the summons, complaint, and motion with a person of suitable age and discretion at their home in Miami, Florida. Plaintiff's affidavits filed in support of the motion for possessory attachment asserted that the defendants were residents of the state of Florida.

The superior court scheduled a hearing on the attachment motion and ordered notice thereof to the defendants by certified mail. Subsequently, the defendants' counsel filed a letter with the clerk of the court which read: "Please enter my appearance for the defendants in the above entitled action." Pursuant to an oral stipulation between the parties' attorneys, the terms of which are now disputed, the trial court entered a writ of attachment[1] against Dana Bray's stock. The attachment was made expressly subject to the escrow agreement. By its terms, the writ rested on the fact that the defendants were not subject to the in personam jurisdiction of the court.

The action lay dormant until November 1976, when plaintiff sought a default judgment. Such a judgment was entered against Dana Bray for $57,752.81, and the plaintiff was granted execution on the attached property. In February 1977, the

---

[1] This attachment preceded *Shaffer* v. *Heitner*, 433 U.S. 186 (1977), and *Rush* v. *Savchuk*, 100 S.Ct. 571 (1980), which hold that the validity of assertions of quasi in rem jurisdiction must be evaluated under the minimum contacts test of *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). The validity of the assertion of quasi in rem jurisdiction in this case is not before us, and we express no opinion thereon.

clerk issued a writ of execution authorizing the satisfaction of the judgment from the attached stock. In April, the plaintiff moved for relief from the judgment on the ground of mistake. The mistake cited was a failure to include in the proposed judgment the 12½ percent per annum interest which was allegedly agreed to in the note. The judgment was amended to include the interest provision.

In May, the defendants moved, purportedly under V.R.C.P. 19, for an order joining Anne Bray and Louis Lisman in the action. It alleged that they were "necessary parties to the proceeding" because of their interests in the escrow property. The plaintiff responded to the motion contending that the right to move for joinder was waived, and asserting that the ex-wife and the escrow agent were not necessary parties. After a hearing, the superior court granted the motion, and ordered the ex-wife and the escrow agent joined as defendants subject to the amended judgment. Counsel for the ex-wife entered an appearance and moved to strike the judgment. The escrow agent joined in that motion. In October 1977, the amended judgment was stricken.

Another long delay ensued. It ended on July 10, 1978, when a proposed amended judgment was submitted by plaintiff. The proposed order sought an in personam judgment against Dana and Germaine Bray based on the "general appearance" of counsel in the action on their behalf. The Brays' attorney filed what he termed "Defendants Dana S. Brays' and Germaine Bray's motion and objection to plaintiff's proposed 'order and second amended judgment.'" That document asserted that the Brays' appearance was for the limited purpose of litigating the question of jurisdiction. A subsequent amendment of this document sought leave to file an answer to plaintiff's complaint if the court should find jurisdiction.

After a judgment order that was inadvertently signed was stricken, the court entered a new order on September 12, 1978, dismissing the escrow agent and ex-wife. Finally, on September 18, the court entered an order concluding that the "general appearance" of defendants' counsel conferred in personam jurisdiction and granting the defendants 14 days to file responsive pleadings. Subsequently, the court granted de-

fendants' motion for permission to appeal under V.R.A.P. 5(b).[2]

■ We consider first the plaintiff's contention that the defense of lack of personal jurisdiction was waived because it was not asserted in timely fashion. Vermont Rule of Civil Procedure 12(h)(1) does provide that a defense of lack of jurisdiction over the person is waived if not made by a motion to dismiss or presented in a responsive pleading. But lack of personal jurisdiction was no defense to the plaintiff's complaint as long as the plaintiff did not rely on personal jurisdiction. It became a potential issue in the case only in 1978, when the plaintiff claimed personal jurisdiction over the defendants.

Our prior law did not require the assertion of defenses before they became available. "[A defendant] will be held to have waived a defense . . . only if he failed to include [it] in a motion or pleading *at the time the objection was first available to him.*" *O'Brien* v. *Comstock Foods, Inc.,* 123 Vt. 461, 467, 194 A.2d 568, 572 (1963) (emphasis supplied). Our current rule, with a few exceptions not relevant here, is but a rearrangement of 12 V.S.A. § 1034, the statute construed by *O'Brien, supra.* Reporter's Notes, V.R.C.P. 12 (main volume). In this respect Rule 12 is consistent with its predecessor. Implicitly it does not enforce a waiver of a defense for nonassertion until the defense is available. Cf. V.R.C.P. 12(g). See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1391, at 853–54 (1969).

■ Moreover, the plaintiff's assertion that the defense has been waived comes after the vacating of a default judgment. That judgment was based on the defendants' failure to plead or otherwise defend. It would be an empty gesture to allow the defendants to reopen the default only to preclude the assertion of their defenses because of it. The law is to the contrary. After a default is vacated the defendant can assert any defense not explicitly precluded by a valid condition of

---

[2] Although we recount the trial court proceedings in substantial detail to provide necessary background, the only issues presented are those briefed and argued by the parties. E.g., *State* v. *Carpenter,* 138 Vt. 140, 148, 412 A.2d 285, 290 (1980). With the exception of those views which are stated expressly, we indicate no opinion as to the procedural regularity of these proceedings.

the order permitting reopening. *One Hour Valet of Peachtree, Inc.* v. *Kamor,* 103 Ga. App. 618, 620, 120 S.E.2d 130, 133 (1961) ; *Forstman* v. *Arluck,* 71 App. Div. 2d 847, 848, 419 N.Y.S.2d 169, 171 (1979) (by implication) (mem.) ; *Pollack* v. *Leonard & Braniff,* 112 Okla. 276, 278, 241 P. 158, 160 (1925).

For these reasons we conclude that the plaintiff's contention that the defense of lack of personal jurisdiction was waived because not timely asserted is without merit.

■ The plaintiff also argues a related point: That the defendants' appearance and subsequent participation in the action conferred in personam jurisdiction on the trial court. It has long been the law in this jurisdiction that a defendant confers in personam jurisdiction by entering a general appearance in an action. E.g., *Society for Propagating the Gospel in Foreign Parts* v. *Ballard,* 4 Vt. 119, 122–23 (1832) ; *Batchelder* v. *Mantak,* 136 Vt. 456, 462, 392 A.2d 945, 948–49 (1978). But application of that rule in these circumstances would place the defendants and similarly situated litigants on the horns of a dilemma—either default in the action and suffer the certain loss of the attached property or appear and risk the possibility of an in personam judgment which the courts of Vermont would not otherwise have the power to impose and which could exceed the value of the property attached. As has been frequently noted this use of quasi in rem jurisdiction as a lever to make a defendant submit to in personam jurisdiction poses a serious constitutional question. *Developments in the Law—State-Court Jurisdiction,* 73 Harv. L. Rev. 909, 954 (1960) ; 4 C. Wright & A. Miller, *supra,* § 1123, at 513 (1969) ; D. Siegal, New York Practice § 113, at 141 (1978).

That question is avoided in jurisdictions which permit a right of limited appearance, *Minichiello* v. *Rosenberg,* 410 F.2d 106, 111–12 (2d Cir. 1968), *cert. denied,* 396 U.S. 844 (1969), thereby restricting the scope of any subsequent judgment to the value of the property attached even after a defendant has litigated the merits. *Developments in the Law—State-Court Jurisdiction, supra,* at 953; Restatement of Judgments § 40 (1942). When this action was commenced, V.R.C.P. 4(e) contemplated that an appearance confer only such jurisdiction as is commensurate with the nature of the proceeding:

[Personal service outside the state] has the same force and effect as personal service within the state, except that a judgment against a person [whose interest in property has been attached in the commencement of the action] shall affect only the interest, title, right, or status in question.[3]

The defendants' letter appearing in the action, which is quoted above, does not contain any restriction or limitation. We do not view this as significant in light of the elimination as procedural devices, of a formal appearance, Reporter's Notes, V.R.C.P. 79.1, and of the special appearance, *O'Brien* v. *Comstock Foods, Inc., supra*, 123 Vt. at 467, 194 A.2d at 572.

We conclude that once a plaintiff has commenced an action pursuant to V.R.C.P. 4(e)(2), any resulting judgment is limited to the value of the property attached, absent explicit consent to in personam jurisdiction by the defendant, his pursuit of affirmative relief, such as the assertion of a permissive counterclaim, or the discontinuance of the litigation in question and the establishment of personal jurisdiction by service of a new summons and complaint in a manner consonant with the requirements of due process. See *Avery* v. *Bender*, 126 Vt. 342, 345, 230 A.2d 786, 788 (1967). The defendants' motion to join Anne Bray and Louis Lisman in the action cannot be considered the pursuit of affirmative relief since it was merely an effort to protect the res upon which jurisdiction had been based.

Contrary language in *Balair, Ltd.* v. *Bordet*, 133 Vt. 182, 183, 332 A.2d 804, 805 (1975), is dicta and fails to account for V.R.C.P. 4(e).

*Reversed and remanded for further proceedings consistent with the views expressed herein.*

---

[3] An amendment to V.R.C.P. 4(e) which became effective on December 3, 1979, has eliminated this language and made other changes. A response to *Shaffer* v. *Heitner, supra*, it abolishes authority under the rules for the exercise of quasi in rem jurisdiction. Presumably, the amendment will foreclose recurrence of the issue presented in this case.